**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

| | |
|---|---|
| **JASON WESTERFIELD & TARA WESTERFIELD** | **PLAINTIFFS** |
| **v.** | **No. 4:19-cv-63-BJB** |
| **ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY** | **DEFENDANTS** |

* * * * *

**OPINION & ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Allstate insured the Westerfields' Central City home against mine subsidence. The Westerfields first noticed damage, which they attributed to mining activity, back in 2012. Their insurance agent filed a claim with Allstate two years later. Between 2014 and 2016, Allstate evaluated the house on three occasions and denied coverage every time. Then, in 2019, the Westerfields sued Allstate in Muhlenberg (County) Circuit Court for breach of contract and bad-faith insurance practices. Allstate removed the case to this Court, the parties settled the contract claim, and Allstate moved for summary judgment on the bad-faith claim.

Because the limitations period expired before the Westerfields sued, and because a reasonable jury couldn't find that Allstate acted in bad faith, the Court grants summary judgment to Allstate.

## I. THE UNDISPUTED RECORD

The Westerfields bought a house in Central City, Kentucky, in 2010. The next year, they obtained an endorsement on their Allstate home-insurance policy to cover any damage to the property caused by mine subsidence. Motion for Summary Judgement (DN 108) at 3–4; Response to Motion for Summary Judgment (DN 110) at 4. After first noticing cracks in their walls and basement in 2012, the Westerfields eventually contacted their agent, Kevin Rice, in 2014. Rice filed a claim for damage caused by subsidence in June of that year. *See* Motion at 4. Allstate sent an outside adjuster, Michael O'Neil, to inspect the home, and his report determined that the damage was caused by "settling," which the policy did not cover. Motion at 4–5; Response at 5. Allstate denied the Westerfields' claim in July 2014. Motion at 5; Response at 5.

In 2015, Allstate reopened the claim at O'Neil's request and sent Donald Richard, a forensic engineer, to conduct a second inspection. Motion at 5; Response at 5–6. Richard's report concluded that the house had experienced "settling damage":

the "wall cracks [were] the result of excessive lateral earth pressure" and "the damage to the structures [was] not the result of nearby surface mine blasting." Richard Report (DN 108-11) at 10. Based on this report, Allstate again denied the Westerfields' claim. Motion at 6; Response at 6.

Finally, after heavy rainfall in early July 2016, the Westerfields filed a new claim, under the same Allstate policy, complaining of similar damage. Motion at 6; Response at 7. This time Allstate dispatched Mark Harwood, another adjuster, to investigate the property. Based on his report, Allstate again denied the Westerfields' claim on July 12, 2016. Motion at 6; Response at 7.

Unsatisfied, the Westerfields continued to inquire into the cause of their house damage. *See* Motion at 10–11; Response at 9–10. They asked the Abandoned Mine Lands Division of the Kentucky Energy and Environment Cabinet to conduct its own investigation, which concluded that "[t]he recently reported cracks located within [the Westerfields'] residential yard and at the roadside ditch areas do not appear to be indicative of mine-related subsidence." Sept. 8, 2017, AML Letter (DN 108-20). The Westerfields, however, later commissioned two additional studies of their home. *See* Motion at 11; Response at 9–10. Both a 2018 inspection by Marino Engineering Associates and a 2021 inspection by engineer Michael Kalinski indicated that mine subsidence was to blame. Marino Engineering Report (DN 108-23) at 6–7; Kalinski Report (DN 110-6) at 2. After receiving these reports, the Westerfields filed suit in September 2022.

## II. The Westerfields' Bad-Faith Claim Is Time-Barred.

Allstate's limitations defense is straightforward. Its insurance policy required that "any action against [Allstate] must be commenced within one year of the date of the 'loss or damage' or when the 'cause of action accrues.'" Motion at 15 (cleaned up).

Both sides agree the accrual date is what matters here. The parties further agree that a claim accrues "when the last event necessary to create the cause of action occurs." *Combs v. International Insurance Co.*, 354 F.3d 568, 591 (6th Cir. 2004). But they disagree whether a bad-faith insurance claim accrues upon a claim's initial denial, or instead upon the settlement of an underlying contractual claim. *Compare* Motion at 15, *with* Response at 12–13.

Under Kentucky law, however, the answer is clear: A "bad faith cause of action in which the allegation is that the insurance company *wrongfully denied* an insured's claim cannot accrue until denial of the claim." *Tennant v. Allstate Insurance Co.*, No. 04-cv-54, 2006 WL 319046, at *2 (E.D. Ky. Feb. 10, 2006); *see also Dimitt v. State Farm Fire & Casualty*, No. 23-cv-55, 2023 WL 6978498, at *4 (E.D. Ky. Oct. 23, 2023) (bad-faith "claims accrue when an insurer denies a plaintiff's claim for coverage");

*Price v. AgriLogic Insurance Services*, 37 F. Supp. 3d 885, 892, 897 (E.D. Ky. 2014) (same).

Allstate denied the Westerfields' second (and final) claim in July 2016. Therefore, the one-year contractual limitations period expired in July 2017, and this suit—which the Westerfields filed in 2019—is time-barred.

The Westerfields resist this conclusion in three ways, none of which succeeds.

*First*, they argue forfeiture. Allstate lost its limitations defense, according to the Westerfields, when the insurer failed to either preserve untimeliness in its answer or assert untimeliness in its first motion for summary judgment. Response at 11. But Allstate expressly asserted the defense in its answer, never affirmatively waived the defense, and didn't violate any binding rule or precedent identified by the Westerfields when it pressed this affirmative defense in its second rather than first summary-judgment motion.

"An affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. Appx 442, 456 (6th Cir. 2006) (quoting 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1274). Rule 8(c)(1) merely requires that "a party must affirmatively state any avoidance or affirmative defense," while Rule 8(d)(2) expressly allows pleading in "hypothetica[l]" terms. Allstate satisfied these requirements in its answer: "this suit may not comply with the applicable statute of limitations, which is under investigation." Answer (DN 6) at 2. Even granting the Westerfields' pejorative characterization of this as "boilerplate language," Response at 11, that boilerplate plainly signaled that Allstate might pursue a statute-of-limitations defense. *See, e.g.*, *Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442, 444 (D.C. Cir. 1994) ("boilerplate language" satisfied Rule 8(c)'s purpose to "put opposing parties on notice"); *McAfee v. IC System, Inc.*, No. 1:24-cv-474, 2024 WL 4871595, at *1–2 (S.D. Ohio Nov. 22, 2024) ("boilerplate" affirmative defenses provided "fair notice" under Sixth Circuit's decision in *Lawrence*).

Moreover, nothing in the Federal Rules of Civil Procedure, this Court's local rules, or Sixth Circuit caselaw prevents Allstate from raising arguments in a successive motion for summary judgment that it did not raise in its original motion. To start, Rule 56(b) allows a party to "file a motion for summary judgment *at any time* until 30 days after the close of all discovery." FED. R. CIV. P. 56(b) (emphasis added). *See also Bush v. D.C.*, 595 F.3d 384, 389 (D.C. Cir. 2010) (Randolph, J., concurring) (movant could raise evidentiary objections in a second summary judgment motion that he did not raise in his first). Allstate's second request complied with Rule 56 in this respect.

True, some decisions reflect a stingier approach to successive summary judgment. Under other courts' local rules or out-of-circuit precedent, it may be "improper … for a party to file a renewed motion for summary judgment 'that is not based upon new facts and that seeks to raise arguments [the party] could have raised in its original motion.'" *Outlaw Performance Boats, LLP v. Brown & Brown of Florida*, No. 2:21-11961, 2023 WL 4492494, at *1 (E.D. Mich. May 2, 2023) (relying on the Eastern District of Michigan's Local Rule 7.1(b)(2), which requires a party to "seek leave of the court to file more than one motion for summary judgment" and quoting *Thomas v. Lambert*, 587 F. Supp. 3d 635, 638 (E.D. Mich. 2022)); *see also Campers' World International v. Perry Ellis International*, 221 F.R.D. 409, 409 (S.D.N.Y. 2004) (citing Second Circuit precedent). But no such law applies in this Court.[1] Absent such a local rule or scheduling order, the Sixth Circuit has said the opposite: "no principle of waiver or preservation … prevent[s]" a party from raising a previously undeveloped argument "in a successive summary judgment motion." *Lexicon, Inc. v. Safeco Insurance Co. of America*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) (addressing a party's arguments on appeal, despite their absence from initial summary-judgment motion, because they could be raised in a second summary-judgment motion).

*Second*, the Westerfields argue that the default five-year statute of limitations established by KRS § 413.120(2)[2] should apply rather than the one-year deadline

[1] Plaintiffs have identified one Western District order, *Cervetto v. Powell*, No. 1:14-cv-75, 2016 WL 9460447 (W.D. Ky. Jan. 27, 2016), which states (but does not hold) that a *renewed* motion for summary judgment is improper if it "seeks to raise arguments [the party] could have raised in its original motion." *Id.* at *2. This precedent—if that's the proper characterization—is unhelpful to the Westerfields for several reasons. First, the court's order involved a party "merely rehashing arguments from his previously dismissed motion" rather than raising new arguments. *Id.* And it doesn't address whether (or how) this purported rule applies to defenses—either properly asserted or unasserted—later raised at summary judgment. Second, the order is a non-binding interlocutory order issued by a Magistrate Judge denying the defendant's second motion for summary judgment. Third, the order's observation rests on caselaw from the Southern District of New York, not anything that would bind this Court. Fourth, and by contrast, Sixth Circuit precedent allows that "[d]istrict courts may in their discretion permit renewed or successive motions for summary judgment." *Salling v. Budget Rent-A-Car Systems*, 672 F.3d 442, 444 (6th Cir. 2012) (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 835 (6th Cir. 2000) (Gilman, J., concurring in part and concurring in the judgment)). And in this case, Judge McKinley's order denying Allstate's first motion for summary judgment expressly granted leave to refile the motion once discovery had concluded. Order Denying First Motion for Summary Judgment (DN 69) at 2.

[2] KRS § 413.120(2) reads: "The following actions shall be commenced within five (5) years after the cause of action accrued: … (2) An action upon a liability created by statute, when no other time is fixed by the statute creating the liability."

imposed by their Allstate policy. Response at 12. No authority "in Kentucky," they assert, "hold[s] that a contractual limitations clause regarding claims of all kinds applies to *tort-based* claims." *Id.* (emphasis added). Plaintiffs correctly assert that Kentucky law generally distinguishes "between a dispute that is merely contractual and one that has tortious elements, such as bad faith." *Id.* But the Westerfields' limitations provision applies to both classes of claims: "*Any action* against [Allstate] … must be commenced within one year of the date the cause of action accrues." Motion at 14–15 (quoting Westerfields' Allstate Policy (DN 108-1)) (emphasis added). And the law doesn't "draw a distinction" between a "contractual bad faith claim" and "tortious or statutory bad faith claims." *Tennant*, 2006 WL 319046, at *3. The Westerfields offer no reason, and this Court is aware of none, why a distinction between breach and tort theories would matter here.

In fact, "there is a solid line of case law in Kentucky that upholds the validity of contractual terms that provide for shorter limitation periods than the general statute of limitations." *Webb v. Kentucky Farm Bureau Insurance Co.*, 577 S.W.2d 17, 19 (Ky. Ct. App. 1978). *See also Price*, 37 F. Supp. 3d at 892 ("Kentucky law has long recognized the validity of insurance contract provisions requiring as a condition to sue that the action must be commenced within the time specified by the policy.") (quotation marks omitted) (quoting *Edmondson v. Penn National Mutual Casualty Insurance Co.*, 781 S.W.2d 364, 366 (Ky. 1971)). And the one-year limitations period provided by the Westerfields' policy is consistent with other limitations periods enforced under Kentucky law. *See Webb*, 577 S.W.2d at 19 (one-year limitation specified in fire-insurance policy); *Hale v. Blue Cross and Blue Shield of Kentucky, Inc.*, 862 S.W.2d 905, 907 (Ky. Ct. App. 1993) (one-year limitation in health-insurance policy).

Two potential caveats apply. First, KRS § 304.14-370 prevents "foreign" insurers from contractually altering § 413.120(2)'s five-year default to "less than one (1) year from the time when the cause of action accrues." Second, insurance contracts may not "unreasonably limi[t] the time in which parties [can] sue." *Price*, 37 F. Supp. 3d at 892; *Smith v. Allstate Insurance Co.*, 403 F.3d 401, 405 (6th Cir. 2005) ("[A] limitation provision … may … be unenforceable if it [does] not allow … a reasonable time to sue."). But neither the case law establishing the reasonableness requirement nor the applicable statutes—both of which apply merely to "actions"—differentiate between contract and tort claims. *See, e.g.*, *Tennant*, 2006 WL 319046, at *7 (one-year limitations period violated § 304.14-370 because it started running at the time

of loss instead of denial, not because it allowed less than one year to sue); *Price*, 37 F. Supp. 3d at 897–98 (similar).[3]

Nor can *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993), the Plaintiffs' only citation for the contract-tort distinction in this context, *see* Response at 12, support their proposed exception. In addressing the appropriateness of a punitive-damages instruction, the *Wittmer* court distinguished a "dispute that is merely contractual" from one that has "tortious elements." *Wittmer*, 864 S.W.2d at 890 (quoting Restatement (Second) of Torts, § 909(2) (1979)). That decision didn't address statutes of limitation at all. *See also Tennant*, 2006 WL 319046, at *4 ("The crucial difference between contractual and tortious bad faith claims is the remedy.") (citing *Curry v. Fireman's Fund Insurance Co.*, 784 S.W.2d 176, 178 (Ky. 1989)).

Finally, the Westerfields argue that their claim did not accrue until settlement of the underlying contract claim because Allstate's obligation to pay—a necessary element of a bad-faith claim—hadn't manifested until the parties reached an agreement regarding Allstate's contractual obligations in 2022. Response at 13. But under Kentucky law, the obligation to pay in a first-party insurance dispute (such as this one) arises from the "express contractual relationship" between the plaintiff and insurer. *Austin v. Standard Fire Insurance Co.*, No. 2:21-cv-129, 2023 WL 5253000 (E.D. Ky. Aug. 15, 2023) (citing *United States Liability Insurance Co. v. Watson*, 626 S.W.3d 569, 575 (Ky. 2021); *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)). In establishing the obligation to pay in first-party suits, courts ask "only whether the policy itself contained coverage for the claim at issue, not whether that coverage has been triggered or the degree of liability arising under it." *Austin*, 2023 WL 5253000, at *7 (citing *Mosley v. Arch Specialty Insurance Co.*, 626 S.W.3d 579, 588 (Ky. 2021)). The Westerfields' agent submitted a claim for mine subsidence, *see* First Notice of Loss (DN 110-1),[4] so Allstate's obligation to pay (though not

---

[3] The Westerfields do not contend that either exception applies, and the Court sees no basis on which they would. True, Kentucky courts have found a one-year limitation period unreasonable "when applied to uninsured motorist coverage in an automobile insurance policy." *Elkins v. Kentucky Farm Bureau Mutual Insurance Co.*, 844 S.W.2d 423, 425 (Ky. Ct. App. 1992). But *Elkins* was a narrow decision based on the Motor Vehicle Reparations Act's unique scheme, *id.* at 424, and "in no way derogate[d] the rule enunciated in *Webb* …, that shortening of the limitation period in which an action must be brought is not *per se* restrictive or unreasonable when applied to all types of insurance contracts," *id.* at 425. *See also State Farm Mutual Auto. Insurance Co. v. Riggs*, 484 S.W.3d 724, 727 (Ky. 2016) (listing many restrictions Kentucky courts have applied only to uninsured-motorist coverage limits—and not to other types of insurance).

[4] Ms. Westerfield told her agent that "she wasn't sure what was causing the damage," but "was aware that blasting was taking place nearby." Response at 4. The claim form, however, contained an option to specify mine subsidence—but not mine blasting. So the agent told

necessarily the other essential elements of the bad-faith suit) was clear from the moment of that filing. Because their policy contained mine-subsidence coverage, the obligation-to-pay element did not depend on any future settlement.[5]

* * *

Because Allstate issued its final denial-of-coverage decision in July 2016, well over a year before the Westerfields filed their May 2019 complaint, the contractual limitations period bars their claim.

### III. No Reasonable Jury Could Find that Allstate Acted in Bad Faith.

The Westerfields' bad-faith claim also independently fails because no reasonable jury could find, on this record, that Allstate acted in bad faith when it denied the Westerfields' claims. Under Kentucky law:

> An insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890 (quotation marks and brackets omitted). The Westerfields allege that mine subsidence caused the damage to their home. Complaint ¶ 5 (DN 1-2). As explained above, *see* pp. 6–7, Allstate bore an obligation to cover mine-subsidence damage under the Westerfields' policy. Therefore, Allstate's liability turns on whether it lacked a reasonable basis for denying the Westerfields'

---

Allstate the claim "ha[d] to do with a mining operation near the home." Motion at 4. He "keyed in [the claim] as 'mine subsidence' because the Westerfields were concerned about nearby mine blasting, and 'that was the closest we had.'" *Id.* For purposes of this litigation, this coding effectively operates as an error in the Westerfields' favor, albeit not a dispositive one. Had the claims been filed for mine blasting rather than subsidence, Allstate's obligation to pay would have been even less clear.

[5] At some points the Westerfields appear to confuse the timeliness rules for first-party and third-party bad-faith claims. In a third-party dispute, the obligation to pay necessarily doesn't arise from any direct contractual obligation between the parties; that's the whole reason third parties must separately establish an insurer's obligation to pay. Such an obligation may arise from "a final judgment from a court … [or] settlement of the underlying claim." *Watson*, 626 S.W.3d. at 574–75. But the Westerfields didn't need to rely on the formation of any such new legal bonds between themselves and their insurer in this case, as evidenced by their filing of a bad-faith claim in May 2019—more than three years *before* the parties settled the contract claim in September 2022. Response at 3.

claims. The Westerfields would also have to show that Allstate *knew* it lacked any reasonable basis for denial (or acted with reckless disregard) yet did so anyway.

Once again, Allstate's argument is simple. The undisputed record shows that all three of Allstate's investigations concluded that settling, not mining activity, caused the damage to the Westerfields' home. *See* above at 1–2. Regardless of the ultimate accuracy of these reports, three reports across three years all arriving at the same conclusion provided Allstate with an incontrovertibly reasonable basis for denying the Westerfields' claims.

The Westerfields' chief counterargument is that their own (surely reasonable) expert reports contradict Allstate's position, creating a triable controversy for a jury. But the Westerfields didn't disclose their rebuttal expert opinions until *after* they filed their state-court complaint, three years after Allstate's final denial. Response at 21–23. At the time of denial, Allstate had three detailed reports written by experienced adjusters or engineers, and no evidence to refute the conclusions of those reports. None of the reports indicated that any prior conclusion was unreasonable or even wrong. Allstate thus could not have lacked a reasonable basis for denying a claim (or acted with reckless disregard) based on as-then undisclosed expert reports.

And the Westerfields haven't pointed to evidence of reckless disregard, which requires "conduct that is outrageous." *Wittmer*, 864 S.W.2d at 890. "Evidence of mere negligence … will not suffice to support a claim for bad faith." *United Services Auto. Association v. Bult*, 183 S.W.3d 181, 186 (Ky. App. Ct. 2003). Whether or not Allstate's investigations reached the correct conclusion, it dispatched three experts, whose reports all arrived at the same diagnosis: settling, not mining activity, caused the damage. Reply (DN 111) at 13. Based on this record, no reasonable jury could find that Allstate was "driven by evil motives or by an indifference to its insureds' rights." *Bult*, 183 S.W.3d at 186.

Moreover, Kentucky law permits "an insurer … to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Wittmer*, 864 S.W.2d 885 at 890. Hindsight may reveal that Allstate's experts were mistaken about the source of the damage, but the reports Allstate had at the time of denial made the question at least debatable under *Wittmer*.

The Westerfields also suggest that a secret audio recording made during Harwood's inspection of the home shows that Allstate denied their claim knowing it had merit. Response at 19. During Harwood's conversation with the Westerfields, he said, "what you have got here is mine subsidence." Response at 7–8; Motion at 8. The Westerfields argue that Harwood was asserting that subsidence caused the damage to their house. Response at 7–8. But Harwood himself testified to the contrary: he was merely "describing mine subsidence as [the coverage] their policy allow[ed]." Second Harwood Deposition (DN 108-16) at 31:25–32:1; Harwood

Deposition (DN 108-15) at 138:20–139:2 (Harwood testified that he was "explaining mine subsidence," not asserting "that there was any mine subsidence on there"). But even assuming the Westerfields interpreted Harwood's statement correctly, his official report determined that settling, not mining activity, caused the damage. July 12, 2016, Denial Letter (DN 108-14) (damage to house was "due to the settlement and shifting of the foundation"). Harwood's report, alongside the two other consonant reports, still provided Allstate "a reasonable basis in law or fact for denying the claim." *Wittmer*, 864 S.W.2d at 890.

Finally, the Westerfields point to Allstate's behavior during discovery to argue that it remained willfully ignorant of its obligation to pay and acted in bad faith. *See* Response at 23–24. Under Kentucky law, a plaintiff may prove up a bad-faith action against an insurance company using evidence of "the insurer's settlement behavior during litigation" but not "its other litigation conduct." *Knotts v. Zurich Insurance Co.*, 197 S.W.3d 512, 523 (Ky. 2006) (quoting Stephen S. Ashley, Bad Faith Actions Liability and Damages § 5A:6 (2005)). In other words, insurers may still defend themselves in court—at least if they do so reasonably. And nothing suggests outrageous litigation conduct here. So the Westerfields' assertion that Allstate "frequent[ly] reschedule[ed] … depositions, fail[ed] to timely respond to emails scheduling the same, [and] provid[ed] piecemeal responses to written discovery" cannot support their bad-faith claim as they do not concern settlement behavior. Response at 24.

## Order

Because the limitations period has expired on the Westerfields' bad-faith claim, and also because no reasonable jury could find that Allstate acted in bad faith on the current record, the Court grants Allstate's motion for summary judgment (DN 108).

Benjamin Beaton, District Judge
United States District Court

September 28, 2026